[Cite as *Warden v. Ohio Dept. of Natural Resources*, 2013-Ohio-1512.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

RICHARD W. WARDEN

   Plaintiff

   v.

OHIO DEPARTMENT OF NATURAL RESOURCES

   Defendant

Case No. 2011-01232

Judge Alan C. Travis

DECISION

{¶ 1} Plaintiff brought this action alleging age discrimination under R.C. 4112.14 and 4112.99. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability. As a result of the liability trial, the court entered judgment in favor of plaintiff. The case then proceeded to trial on the issue of damages.

{¶ 2} The following facts were set forth in the court's decision on liability:

{¶ 3} "Plaintiff is a registered professional engineer who was employed by defendant for 29.5 years. On October 1, 2006, plaintiff accepted a two-year buyout and retired from his position as a Natural Resources Engineer 4 in defendant's Mineral Resources Management (MRM) Division, after 31.5 years of state service. Plaintiff was 51 years old when he retired.

{¶ 4} "Following plaintiff's retirement, legislation was enacted that required defendant to prepare an estimate of the cost to reclaim coal mining sites in the event that the coal mining operator forfeited. To comply with the new legislation, defendant's

MRM division was required to create a program that could perform such estimates.  In March 2007, MRM's Division Chief, John Husted, contacted plaintiff to see if he would resume his employment with MRM on an intermittent basis in order to develop the required program.  Plaintiff agreed and he was awarded a one fiscal year, '1000-hour' contract as an Engineer 4.  Plaintiff was subsequently granted three additional 1000-hour contracts.

{¶ 5} "In the fall of 2009, MRM division officials began discussing whether to create a full-time Natural Resources Engineer 3 position to perform the work that plaintiff was performing under his intermittent assignments.  During these discussions, Husted and Susan Grant, plaintiff's immediate supervisor, approached plaintiff and asked him whether he would be interested in a full-time Natural Resources Engineer 3 position.  On November 20, 2009, plaintiff informed Grant that he was interested in the position. (Plaintiff's Exhibit 22.)

{¶ 6} "In early 2010, defendant posted a position for a full-time Engineer 3.  On February 24, 2010, plaintiff applied for the posted position.  At the time of his application, plaintiff was still working for defendant pursuant to his most recent 1,000-hour contract.  On March 31, 2010, Mamie Hollenback, defendant's human resource associate, mailed a letter to plaintiff notifying him that an interview had been scheduled for him on April 29, 2010.  However, according to Hollenback, prior to plaintiff's interview, she informed the interview panel that former employees who had retired could not be rehired in a full-time position.  Plaintiff's interview went forward as scheduled.  At the conclusion of the interviews, plaintiff had earned the highest overall score.

{¶ 7} "On May 5, 2010, Husted informed plaintiff that it was not likely that he would be selected for the full-time position because he was a retiree.  Grant and Lanny Erdos, Deputy Chief of the Coal Regulatory Mine Safety and Industrial Minerals program, also informed plaintiff that he would not be selected for the full-time Engineer 3 position because the administration would not allow an individual who had retired from

the agency to be rehired into another full-time position.  Plaintiff complained to Husted, Grant, and Erdos, that such a policy would result in the employment of a less qualified individual. Plaintiff's final day in defendant's employment was June 5, 2010.

{¶ 8} "Defendant eventually selected Jared Knerr for the Engineer 3 position. Knerr was 39 years old when he was hired.  Plaintiff was 54 years old when he learned that he had been rejected for the full-time position."

{¶ 9} The court found that defendant's decision to offer the position to Knerr rather than plaintiff constituted age discrimination in violation of R.C. Chapter 4112. "When a party is injured by a violation of R.C. Chapter 4112, they are entitled to 'make whole' relief.  *Ohio Civ. Rights Comm. v. David Richard Ingram, D.C., Inc.*, 69 Ohio St.3d 89, 93 (1994).  A plaintiff is made whole by being returned to the position the plaintiff would have occupied had the discrimination not occurred.  *McNeil v. Economics Laboratory, Inc.*, 800 F.2d 111, 118 (7th Cir.1986).  Normally, this means the plaintiff is entitled to reinstatement."  *Burchett v. E. Liverpool Dodge Chrysler Plymouth, Jeep*, 7th Dist. No. 2001-CO-16, 2002-Ohio-3045, ¶ 23-24.

{¶ 10} Although reinstatement is the preferred remedy, where it would be inappropriate or impractical, front pay is available as an equitable remedy to make the injured party whole through financial compensation.  *Berge v. Columbus Community Cable Access*, 136 Ohio App.3d 281, 323 (10th Dist.1999).  "Front pay is awarded only 'where reinstatement is inappropriate and the plaintiff has been unable to find another job, in order to make victims of discrimination whole where the fact finder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable employment.'"  *Jordan v. Ohio Civ. Rights Comm.*, 173 Ohio App.3d 87, 2007-Ohio-3830, ¶ 44 (12th Dist.), quoting *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1182 (2nd Cir.1996).

{¶ 11} Additionally, an award of back pay serves "to make the wrongfully terminated employee whole and to place that employee in the position the employee

would have been in absent a violation of the employment contract.' * * * In order to recover back pay, a plaintiff has a duty to mitigate. 'Interim earnings or amounts earnable with reasonable diligence * * * shall operate to reduce the back pay otherwise allowable.' * * * 'This duty, rooted in an ancient principle of law, requires the claimant to use reasonable diligence to find other suitable employment. Although the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position, he forfeits his right to back pay if he refuses a job substantially equivalent to the one he [lost].'" *Id.* at ¶ 43, quoting *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231 (1982). "The award of back pay for lost earnings given for the period between discharge and either reinstatement or time of trial must be reduced by any income the employee earned." *Worrell v. Multipress, Inc.*, 45 Ohio St.3d 241, 246 (1989), fn. 3. "Any ambiguity in what the claimant would have received but for discrimination should be resolved against the discriminating employer." *Rasimas v. Mich. Dept. of Mental Health*, 714 F.2d 614, 628 (6th Cir.1983).

{¶ 12} Plaintiff testified at the damages phase of the trial that upon learning he had been rejected for the position, he began to monitor employment websites to look for engineering jobs in his specialized field. Plaintiff explained, though, that while he has seen job postings for other fields of engineering, as well as postings for consulting jobs related to his field but that require a master's degree or Ph.D., he has been unable to find a full-time position in the Columbus area that matches his experience and education (e.g., bachelor's degree).

{¶ 13} Plaintiff testified that he worked as a part-time cashier at a Lowe's home improvement store from September 2010 to February 2011, and that in January 2011, he applied for but did not obtain a receptionist position at a medical office where his wife works. Plaintiff also stated that he formed an engineering consulting business through which he has worked on a few projects for Ohio State University, American Electric Power, and Columbus Southern Power, and that he has done some limited teaching of

online continuing education courses through the website PDHengineering.com.  Plaintiff testified that he continues to look for full-time engineering work.

{¶ 14} Plaintiff acknowledged that when Husted initially made an offer for him to return to work as a contractor in December 2006, he declined.  And, during the last of plaintiff's 1000-hour contracts with defendant, he had a discussion with Grant via e-mail about his potential interest in the new Natural Resources Engineer 3 position. (Plaintiff's Exhibit 22.)  In that exchange, plaintiff stated that he desired a "Starting rate no lower than my present rate" of pay ($30.68/hour under the contract) and that "Any chance I start less than today's rate, and the decision will be made for me."  *Id*. Ultimately, after Knerr had been selected for the position, Husted submitted an "approval request form" to defendant's office of human resources seeking to hire Knerr as a Natural Resources Engineer 3, Step 4, to be compensated at $31.09 an hour. (Plaintiff's Exhibit 10.)  Knerr, however, who had less relevant experience than plaintiff, was only approved at a Step 1 level, to be compensated at $27.93 an hour.  (Joint Exhibit F.)  Plaintiff also stated in his e-mail exchange with Grant that he had discussed future plans with his wife and that "She's okay with 5 years of me being full-time" at defendant.  (Plaintiff's Exhibit 22.)  At trial, plaintiff stated that he wanted to return to work for defendant to finish the mine reclamation cost estimate project.

{¶ 15} Upon review, the court finds that the greater weight of the evidence demonstrates that plaintiff exercised reasonable diligence in looking for other suitable employment after being rejected for the Natural Resources Engineer 3 position.  Plaintiff testified credibly that he has monitored employment websites at least weekly since that time but has not been able to find full-time work that matches his particular background and education.  There is no evidence that plaintiff has declined any job opportunities substantially equivalent to the one for which defendant rejected him.  Plaintiff has nonetheless found opportunities to perform some limited consulting work in his field, and although he was under no duty to go into another line of work, he did seek out jobs

as a cashier and receptionist. The court thus finds that plaintiff is entitled to recover back pay beginning from August 2, 2010, the date of the rejection letter, minus his interim earnings.

{¶ 16} The court further finds that reinstatement is inappropriate under the circumstances. The evidence demonstrates that Knerr, an innocent party, is now in his third year of filling the Natural Resources Engineer 3 position, and that when plaintiff negotiated for the position in 2010, he only intended to work for a period of five years. The court also finds, however, that plaintiff is entitled to an award of front pay inasmuch as the weight of the evidence establishes that plaintiff would have accepted the position if it had been offered to him and would have remained so employed for a five-year period, and that plaintiff does not have a reasonable prospect of obtaining comparable employment.

{¶ 17} Accordingly, the court finds that plaintiff is entitled to an award of back pay and front pay equivalent to the amount he would have earned had he held the job for five years. Plaintiff presented expert testimony on the issue of damages from economist John Burke, Ph.D., who testified that the present value of plaintiff's after-tax lost earnings and benefits over that five year period, reduced by his interim earnings and anticipated future earnings from his consulting business, amounts to $426,003; he specified that $157,411 of that amount represents back pay as of the date of trial, with the remainder representing front pay. Although defendant challenges Dr. Burke's assumption that plaintiff would have started at a salary of $64,000, earned step increases beyond what Knerr actually earned, and earned fringe benefits equivalent to 34.5% of his salary, the court finds that these figures are supported by the evidence. The benefits and starting salary figures correspond to the "approval request form" that Husted submitted when hiring Knerr, and although the office of human resources ultimately approved the hire at a lower salary, the court is persuaded that in light of

plaintiff's greater experience, he would have been hired at the requested rate and earned the step increases assumed by Burke. (Plaintiff's Exhibit 10.)

{¶ 18} Plaintiff also seeks post-judgment interest on the award of back pay at the current statutory rate of 3% per annum pursuant to R.C. 2743.18(B). In its post-trial briefs, defendant acknowledges that the statute allows for the same. Accordingly, post-judgment interest shall be allowed on plaintiff's back pay award in accordance with R.C. 2743.18(B).

{¶ 19} Plaintiff also seeks to recover for the increased tax liability associated with receiving the back pay as a lump-sum award, rather than over time. Dr. Burke testified that the increased tax liability amounts to $17,358. Defendant does not address this issue in its post-trial briefs. "[A]n award to compensate a prevailing employee for her increased tax burden as a result of a lump sum award will, in the appropriate case, help to make a victim whole. This type of an award, as with prejudgment interest, represents a recognition that the harm to a prevailing employee's pecuniary interest may be broader in scope than just a loss of back pay. Accordingly, either or both types of equitable relief may be necessary to achieve complete restoration of the prevailing employee's economic status quo and to assure 'the most complete relief possible.'" *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 442 (3rd Cir.2009), quoting *Local 28 of Sheet Metal Workers' Internatl. Assn. v. E.E.O.C.*, 478 U.S. 421 (1986). The court finds that plaintiff is entitled to recover for his increased tax liability in the amount of $17,358.

{¶ 20} Furthermore, in the case of a retired individual who receives a pension through the Ohio Public Employees Retirement System (OPERS) and returns to public employment, the individual is then required to contribute a portion of his or her salary to a Money Purchase Plan administered by OPERS. Upon separation from the latter position of employment, the individual is entitled to a lump sum payment from the Money Purchase Plan. According to Dr. Burke's calculations, if plaintiff had been awarded the Natural Resources Engineer 3 position and worked for five years, his lump

sum payment would be $2,186.  The court finds that plaintiff is entitled to recover that amount.

**{¶ 21}** On August 31, 2012, plaintiff filed a motion for attorney's fees pursuant to R.C. 4112.14(B).  Also on August 31, 2012, plaintiff filed a motion for leave to supplement Plaintiff's Exhibit 32 with records of additional litigation costs, which is GRANTED instanter.  On September 17, 2012, defendant filed a memorandum opposing the motion for attorney's fees.  Plaintiff filed a reply on September 21, 2012.  That same day, plaintiff also filed both an application for leave to exceed the page limitations for his post-trial brief pursuant to L.C.C.R. 4(E), and a motion for leave to supplement his motion for attorney's fees, both of which are GRANTED instanter.

**{¶ 22}** Pursuant to R.C. 4112.14(B), "[i]f the court finds that an employer has discriminated on the basis of age, the court shall order an appropriate remedy which shall include reimbursement to the applicant or employee for the costs, including reasonable attorney's fees, of the action * * *."  Having found that defendant discriminated on the basis of age in this case, and finding the costs and fees incurred by plaintiff in pursuing this action to be reasonable, plaintiff's motion for the same is GRANTED.  Plaintiff shall be awarded costs in the amount of $8,564.75, which includes the $25 filing fee, and attorney's fees in the amount of $53,545.

**{¶ 23}** For the reasons set forth above, the court finds that plaintiff is entitled to recover total damages in the amount of $507,656.75, which includes an award of back pay in the amount of $157,411.  Post-judgment interest shall be allowed on plaintiff's back pay award in accordance with R.C. 2743.18(B).  Judgment shall be rendered accordingly.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

RICHARD W. WARDEN

   Plaintiff

   v.

OHIO DEPARTMENT OF NATURAL RESOURCES

   Defendant

Case No. 2011-01232

Judge Alan C. Travis

JUDGMENT ENTRY

{¶ 24} This case was tried to the court on the issue of damages. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor plaintiff, Richard W. Warden, in the amount of $507,656.75, which includes an award of back pay in the amount of $157,411. Post-judgment interest shall be allowed on plaintiff's back pay award in accordance with R.C. 2743.18(B). Court costs are assessed against defendant. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
ALAN C. TRAVIS
Judge

Case No. 2011-01232 - 10 - ENTRY

cc:

Emily M. Simmons
Randall W. Knutti
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Merl H. Wayman
425 Metro Place North, Suite 420
Dublin, Ohio 43017

001
Filed January 15, 2013
To S.C. Reporter April 16, 2013